Rochester Ford v. Ford Motor Co.       CV-99-559-M    06/21/01
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Rochester Ford Sales, Inc.;
and Meredith S. Pierce,
Trustee of J. Pierce Trust,
     Plaintiffs

     v.                                Civil No. 99-559-M
                                       Opinion No. 2001 DNH 115
Ford Motor Company,
     Defendant


                       **O R D E R**


     Having considered defendant's motion for summary judgment
(document no. 24) on the remaining claims, plaintiff's objection
and memorandum of law (documents no. 27, 28), and the oral
arguments presented, the court grants defendant's motion.

     Two claims remain in this case.  Counts II and IV of the
amended complaint assert that Defendant Ford Motor Company
("Ford") violated provisions of New Hampshire's Regulation of
Business Practices Between Motor Vehicle Manufacturers,
Distributors, and Dealers Act.  Count II alleges violation of the
current version of the Act, N.H. Rev. Stat. Ann. ("RSA") ch. 357-
C, while Count IV makes the same allegations, but under the
predecessor (repealed) Act, RSA ch. 357-B.

The gist of plaintiff's claim is that Ford "unreasonably withheld" its consent to plaintiff's proposed sale of its Ford dealership to an identified buyer, resulting in a substantial financial loss given the difference between what the proposed buyer offered to pay and what the eventual Ford-approved buyer actually paid. See e.g., RSA 357-C:3, I, and III (n). The same allegations were made in support of a breach of contract claim as well but, because suit was not filed within the applicable three year limitations period, the contract count was previously dismissed. The limitations period applicable to suits brought under RSA ch. 357-C is four years, however, and Counts II and IV were timely filed.

Ford moves for dismissal of Count IV on grounds that RSA ch. 357-B was repealed in 1981, and it moves for summary judgment as to both Counts II and IV on grounds that plaintiff previously released Ford "from any and all . . . liability . . . with respect to all relationships and actions . . . however claimed to arise" (with a few exceptions not pertinent here). Ford Sales and Service Agreement, ¶ 23, Exhibit 11, Plaintiff's Opposition to Summary Judgment (document no. 27). Ford does not challenge the applicability of RSA ch. 357-C, and the court is satisfied

2

that its provisions do inure to plaintiff's benefit relative to Ford and are substantively identical to those contained in the repealed RSA ch. 357-B, at least as relevant here. See generally, Ford Motor Company v. Meredith Motor Company, Inc., Civil No. 97-456-B, Opinion No. 2000 DNH 186 (August 24, 2000). Accordingly, Count IV is dismissed for failure to state a claim.

Defendant's motion for summary judgment is determined according to familiar standards. When "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party and a 'material' fact is one that might affect the outcome of the suit under governing law." Fajardo Shopping Ctr. v. Sun Alliance Ins. Co., 167 F.3d 1, 7

3

(1st Cir. 1999). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Libberty Lobby, Inc., 477 U.S. 242, 256 (1986); Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000).

Factual Background

Although plaintiff contends that much is disputed, there does not appear to be any genuine dispute as to material facts. It is agreed that in December of 1995, Ford refused its consent to a proposed sale of plaintiff's dealership to Rochester Lincoln Mercury, Inc. (Under the terms of the pertinent agreement Ford's approval was required before the dealership could be sold.) Plaintiff's owners were disappointed by Ford's refusal to consent, and believed that refusal gave rise to claims against Ford for breach of contract and violation of the provisions of RSA ch. 357-C (particularly RSA 357-C:3,I, which prohibits "bad faith, or unconscionable" action and section 3, III(n), which prohibits "unreasonable restrictions" on dealership transfers).

Nevertheless, plaintiff continued to seek other buyers and, on January 23, 1998, executed an agreement to sell the dealership

4

to Dennis Roberts and Kevin Donovan. Exhibit 1, Plaintiff's Opposition (document no. 27). Ford approved that sale and, to facilitate the dealership transfer, plaintiff voluntarily terminated its Ford Sales and Service Agreement. Defendant's Motion for Summary Judgment, Exhibit B (document no. 24). Plaintiff also elected a parts repurchase option available to it under the agreement, making demand, in its written notice of termination, that Ford "purchase or accept upon return from the [plaintiff], in return for [its] general release" unused, undamaged, and unsold parts on hand. See id.; Plaintiff's Objection to Summary Judgment, Exhibit 11 (document 27). Plaintiff assigned that parts buy back option to the purchaser of its Ford dealership. Id., Exhibit 1, p. 3. ("Termination rights for vehicles and parts returnable under the Dealer Sales and Service Agreement with Ford Motor Corporation shall accrue to Buyers at the option of the Buyers."). And, consistent with the terms of its Ford dealership agreement, plaintiff executed and delivered a written general release in favor of Ford, in exchange for the parts buy back option and right of assignment. See Defendant's Motion for Summary Judgment, Exhibit B and Exhibit C.

After closing the sale of its dealership, plaintiff brought this suit against Ford, the remaining count of which alleges that Ford violated the protective provisions of RSA ch. 357-C.

## Discussion

The dispositive question presented by Ford's summary judgment motion is rather straight-forward:  Is plaintiff bound by the terms of its general release?  There is little doubt that, on its face, plaintiff's release precludes this suit.  Plaintiff argues, however, that the release is not binding for two basic reasons.  First, it says the release is not supported by adequate consideration, and, second, it claims the release was coerced, or the product of duress.

Plaintiff's first contention is without merit.  The Dealership Agreement very clearly provided plaintiff with an option relative to parts repurchase upon its voluntary termination of the dealership agreement:  (1) it could either elect to put the eligible parts back to Ford (or assign that right to its purchaser), in exchange for a general release of all claims against Ford (except for a few defined matters not pertinent here); or (2) it could elect to keep the parts and/or

6

sell them to others, giving no release to Ford, and retaining the right to sue Ford on any claims plaintiff might have.

Plaintiff elected the repurchase option and assigned those rights to its purchaser. Plaintiff also executed and delivered the general release called for by the contract.[1] The consideration given by Ford for the release was its agreement to buy back, at plaintiff's option, eligible parts from plaintiff's stock, either from plaintiff or plaintiff's assignee, which consideration was adequate to support the general release obligation. See Hyman v. Ford Motor Company, supra, n.1; Grand Motors, Inc. v. Ford Motor Co., 564 F.Supp. 34, 39-40 (W.D.Mo. 1982).

Plaintiff also suggests that the parts buy back option was little more than an illusory promise because New Hampshire law independently required Ford to buy back qualifying parts upon termination of the dealership agreement. But, the statutory

---

[1] RSA 357-C:3,III(m) prohibits manufacturers from requiring "a motor vehicle dealer to assent to a release . . . which would relieve any person from liability" under the statute. But that provision is inapplicable here since Ford did not "require" a release of liability as a condition of the dealership relationship, but bargained for a release supported by adequate consideration at the dealer's option. See, e.g., Hyman v. Ford Motor Company, __ F. Supp. 2d __, 2001 WL 474173 (D.S.C. February 22, 2001).

provision on which plaintiff relies, RSA 357-C:7,VI(b), only applies to involuntary termination or nonrenewal by the manufacturer, not voluntary termination by the dealer, as was the case here. See, e.g., Mazda Motors of America, Inc. v. Southwestern Motors, Inc., 250 S.E.2d 250 (N.C. 1979). The language of RSA 357-C:7 is plain and unambiguous, and its words and phrases are to be given their usual and common meaning. See Appeal of Booker, 139 N.H. 337 (1995); In re Cote, 144 N.H. 126 (1999). Section 7 unambiguously describes the limitations on a manufacturer's ability to terminate or decline to renew a franchise relationship with a licensed new motor vehicle dealer, and subsection VI(b) plainly requires a manufacturer to pay the dealer cost of certain parts or accessories "[w]ithin 90 days of the valid termination or nonrenewal with notice, in good faith, and for good cause . . ." to the terminated dealer. The earlier subsections preclude manufacturers from terminating or failing to renew dealership relationships unless good cause exists (subsection I); notice has been given (subsection V); the action was taken in good faith (subsection I); etc. Consequently, the statutory repurchase provisions do not duplicate the contractual repurchase provisions — the statutory provisions only apply when

8

the manufacturer terminates the dealership relationship. Plaintiff's contrary reading is simply not supported by the plain language of the statutory provisions.

Plaintiff had and made choices under the agreement, presumably after having considered its options and the likely consequences of its decisions. At the time, it no doubt decided that it was economically advantageous to sell the inventory to its buyers along with an assigned option permitting the buyers to return unwanted and eligible parts to Ford for repurchase. In order to acquire that buy back option, however, plaintiff necessarily released Ford from any and all liability arising out of their prior relationship.

Plaintiff's second point is equally without merit. The record does not support plaintiff's coercion claim, and suggests that plaintiff might be confused about the event triggering its general release of Ford. Paragraph 21 of the Dealership Agreement provides as follows:

> 21. Upon termination or nonrenewal of this agreement by the Company [Ford], the Dealer [Plaintiff] may elect as provided in Paragraph 23 or, upon termination or nonrenewal of this agreement by the Dealer, the Dealer may demand in his notice of termination or nonrenewal, to have the

> Company purchase or accept upon return from
> the Dealer, <u>in return</u> for his general release
> specified in Paragraph 23:
>
> . . . 21.(b)  Genuine Parts.  Each unused,
> undamaged and unsold GENUINE PART, . . .
> [etc.] [emphasis supplied]

Paragraph 21.(g) of the agreement provides for an assignment of the repurchase rights extended in Paragraph 21, and reiterates the accompanying general release obligation:

> 21.(g)  Assignment of Benefits.  As an assist
> to the Dealer in effecting an orderly
> transfer of his assets to a replacement
> dealer and to minimize possible interruptions
> in customer convenience and service, in the
> event of a termination or nonrenewal by
> either party, any <u>rights</u> or benefits with
> respect to subparagraphs 21(a), 21(b), 21(c)
> and 21(d), herein <u>may be assigned by the
> Dealer to anyone to whom the Dealer has
> agreed to sell the respective property</u> and
> whom the Company has approved as a
> replacement for the Dealer.  Such assignments
> will be subject to Dealer's fulfillment of
> his obligations under paragraph 19 and this
> paragraph 21 and <u>subject to the Dealer's
> tender of a general release as specified in
> paragraph 23</u>.  [emphasis supplied.]

Paragraph 23 describes options extended to the Dealer in the event Ford terminates or declines to renew the dealership agreement, and goes on to provide, in pertinent part:

10

> Upon the Dealer's election to accept any of
> such benefits, <u>or upon the Dealer's demand of</u>
> <u>any such benefits upon any termination or</u>
> <u>nonrenewal by the Dealer, the Company shall</u>
> <u>be released from any and all other liability</u>
> <u>to the Dealer with respect to all</u>
> <u>relationships and actions between the Dealer</u>
> <u>and the Company, however claimed to arise</u>,
> [except as to matters not relevant here].
> <u>Simultaneously with the receipt of any</u>
> <u>benefits so elected or demanded, the Dealer</u>
> <u>shall execute and deliver to the Company a</u>
> <u>general release . . . satisfactory to the</u>
> <u>Company</u>.  [emphasis supplied]

As noted, plaintiff unequivocally elected (and assigned) the repurchase benefits described in Paragraph 21, and made demand for those benefits in its written notice of termination. Accordingly, "upon [plaintiff's] demand of . . . such benefits," Ford was "released from any and all other liability to the [plaintiff] with respect to all relationships and actions between the [plaintiff] and [Ford], however claimed to arise." Plaintiff, "simultaneously" with its demand for those benefits, became obligated to execute and deliver a general release.

The record leaves no doubt that plaintiff voluntarily terminated its dealership agreement, made demand for repurchase benefits in its written notice of termination, assigned those rights to its Ford-approved purchaser to assist in the transfer

11

of plaintiff's assets, and, as required by contract, executed and delivered a general release that plainly released any breach of contract claim, or claim based on alleged violations of RSA ch. 357-C, arising from Ford's earlier refusal to approve a prospective purchaser of plaintiff's dealership. The terms of paragraph 23 are unambiguous — Ford was effectively released upon plaintiff's demand for the repurchase benefits; the subsequent written release served merely to memorialize the automatic release triggered by plaintiff's demand, and the release was effective relative to the remaining claim in this case. See DeValk Lincoln Mercury, Inc. v. Ford Motor Company, 811 F.2d 326 (7th Cir. 1987).

Accordingly, plaintiff's contention that the written release form was later "coerced" (i.e., after the release effected by plaintiff's demand for repurchase benefits) is of no moment, because Ford was automatically released when written demand was made by plaintiff in its voluntary notice of termination. In any event, the record does not support a claim of legal coercion. Ford was entitled under the dealership agreement to a written release and was within its rights to insist upon it. Plaintiff was certainly free under the agreement to elect not to demand

12

repurchase benefits and retain any causes of action it might have had against Ford, but Ford was equally entitled to offer repurchase benefits in exchange for a general release. Whether plaintiff's choice was wise or unwise in hindsight is beside the point; its choice was voluntary and uncoerced. <u>See e.g.</u> <u>Schmitt-Norton Ford, Inc. v. Ford Motor Company</u>, 524 F.Supp. 1099, 1104 (D. Minn. 1981); <u>Grand Motors, Inc., et al. v. Ford Motor Company</u>, 564 F.Supp. at 41; <u>Devalk Lincoln Mercury Inc. v. Ford Motor Co.</u>, 811 F.2d at 333-34.

<u>Conclusion</u>

The terms of the dealer franchise agreement at issue are plain and unambiguous. Plaintiff elected repurchase benefits under the agreement, thereby triggering a general release obligation, and plaintiff's election was not the product of economic coercion or duress. There appears to be no genuine issue as to any material fact and, given the facts as established, defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment on Count II is granted.

Count IV is dismissed.  Judgment shall be entered in favor of defendant on Count II, and the case shall be closed.

**SO ORDERED.**

                             _____
                             Steven J. McAuliffe
                             United States District Judge

June 21, 2001

cc:   Brian R. Barrington, Esq.
       Daniel A. Laufer, Esq.
       James E. Higgins, Esq.
       Nicholas T. Christakos, Esq.